UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 4, 2016
```

------------------------------------------------------------------X

JENNIFER FELTENSTEIN,

                Plaintiff,

        -v-                            14-cv-4797 (KBF)

                                  <u>OPINION & ORDER</u>

WYKAGYL ASSOCIATES HJ, LLC and
STARBUCKS CORPORATION,

                Defendants.

------------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

      This is one of the unusual Americans with Disabilities ("ADA") access cases which requires a legal ruling. While most judges have a number of ADA access cases on their docket at any given time, it is rather rare for one to require more than case management and episodic consideration of attorneys' fees. Most ADA access cases settle. For that reason, the case law in this area is relatively under-developed given the breadth of the statutory schema and number of suits filed.

      This was a rather run of the mill ADA access case, until it wasn't. Plaintiff Jennifer Feltenstein, a wheelchair user, commenced suit in June 2014. In her complaint, she alleges that a Starbucks store in a strip mall in Westchester County (the Wykagyl Shopping Center) had a number of structural barriers that prevent and/or restrict access to a person with a disability, such as plaintiff. (See Compl., ECF No. 64.) Plaintiff sued both Starbucks and the owner of the shopping area, Wykagyl Associates HJ, LLC ("Wykagyl"). At a conference on February 17, 2016,

the parties indicated that a settlement with Starbucks was forthcoming.  (Tr. 7-8.)[1]
The Court understands that a settlement with Starbucks is being finalized.
Wykagyl also expressed a desire for settlement rather than incurring fees but the
parties were unable to agree to terms.  Throughout, Wykagyl has maintained that
any access violations have been remediated and that the real remaining issue is one
of attorneys' fees;  for her part, plaintiff maintains that a significant issue relating
to accessibility of a sidewalk remains unremediated.

Following further and unsuccessful settlement attempts, plaintiff and
Wykagyl have brought cross-motions to resolve a primary legal issue in this action.
(See Tr. 14-15, 16-17; ECF Nos. 51, 66; see also Pl.'s Ltr. Br., ECF No. 62, at 1;
Def.'s Ltr. Br., ECF No. 60, at 2.)  For the reasons set forth below, it is absolutely
clear that Wykagyl's position on the legal issue is correct.  Accordingly, the Court
GRANTS Wykagyl's motion for summary judgment and DENIES plaintiff's.[2]

---

[1]     "Tr." citations refer to pages of the transcript for the February 17, 2016 status conference.

[2]     Plaintiff submitted a letter on April 27, 2016 stating that resolution of the legal issue does
not dispose of all remaining issues in this case.  (ECF No. 67.)  Defendant opposed on April 29, 2016,
arguing that after resolution of the legal issue, there are no more outstanding issues to litigate
because defendants have already offered to remedy all items in plaintiff's expert report.  (ECF No.
69.)  The Court is uncertain as to plaintiff's specific position regarding what remains of this case
following resolution of this motion. It is certain that plaintiff intends to continue to try and litigate
various matters.  The Court discusses a schedule for bringing any final motions at the conclusion of
this decision but warns all counsel of the rules against unnecessary proliferation of litigation.  See 28
U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and
vexatiously may be required by the court to satisfy personally the excess costs, expenses, and
attorneys' fees reasonably incurred because of such conduct."); Fed. R. Civ. P. 11(b) ("By presenting
to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that . . . it is not
being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly
increase the cost of litigation[.]").

I.    FACTS

At the conference before the Court on February 17, 2016, the parties agreed that the facts necessary to resolution of this motion are undisputed.  (Tr. 19-20.)

Plaintiff Feltenstein is a wheelchair user who lives in Westchester County. (Compl. at 6.)  She frequents a medical facility in the Shopping Center and alleges that would like to access a Starbucks in the Shopping Center but, due to violations of the ADA which render it inaccessible, cannot.  (Compl. ¶ 28.)  In her complaint, she alleges "[n]umerous architectural barriers." (Compl. ¶ 13.)  She recites a litany of issues relating to the overall physical site, and a host of issues which relate to the interior of Starbucks' premises.  (Compl. ¶ 21.)[3]

The remaining legal issue between the parties concerns an exterior walkway around the northern boundary of the site.  The parties agree that due to the protrusion of a gas meter on one section of the walkway, it is not accessible under the meaning of the ADA.  It is helpful to illustrate the issue by referring to the diagram which the parties have used in the conference with the Court on February 17, 2016, and in their briefing on this motion:[4]

---

[3]    The Complaint filed at the commencement of this case appeared to be missing page 5.  On April 20, 2016, the Court ordered the parties to provide the extra page (ECF No. 63), and plaintiff filed another copy of the Complaint that included that page. (ECF No. 64.)

[4]    See ECF No. 62, Ex. A; ECF No. 61, Ex. 1.  The Court has added the text boxes "FRONT" and "BACK" to the appropriate locations in the figure below.



As is apparent from the diagram, the Shopping Center may be thought of as having a "front" ("Front") and a "back" ("Back").  The Front is the area on the right.  A user of the premises may park in the Front parking area and thereby directly

4

access each of the businesses in the Shopping Center: the medical facility, Chase, CVS, a nail salon, a dry cleaners, a pizzeria, a café and Starbucks. There is no contention that the accessible parking spaces or access provided from those parking spaces to the entrances of the shops located in the Front are inaccessible or violate the ADA at this time. Plaintiff does not dispute that if she parks her car in the Front, she has full access to all of the public accommodations on the site. The remaining dispute between the parties concerns access from the Back.

The Back parking lot is located on the left of the diagram. There are accessible parking spaces located in this area as well. The shops on the far right of the diagram—including the nail salon, cleaners, pizzeria, café and Starbucks—are not directly accessible from the Back. To access those shops, a wheelchair user would have to either park in the Front or park in the Back and walk through the CVS (referred to as the "CVS thoroughfare").[5] A user able to ambulate without a wheelchair would have an additional option: the walkway that commences at the Back of the medical facility, proceeds north and then comes down and around the Front. The Court refers to this as the "Northern walkway."

It is undisputed that the CVS thoroughfare requires passage through the store itself during business hours. There is no assertion that there is any physical impediment or condition which would interfere with wheelchair accessibility on this route. It is also undisputed that the Northern walkway is longer than the CVS

---

[5]    Defendant also states that a patient of the medical facility could also pass through that facility to get to the Front. Plaintiff concedes that she is a patient (or that her family members are patients) of the medical facility and would therefore be entitled to pass through the facility on those occasions when she has an appointment. However, the Court in this opinion only focuses on thoroughfares that are open to members of the public.

thoroughfare, exposed to the elements, and less safe as it abuts two-way vehicular traffic.

The CVS located in the Shopping Center operates from 8:00 in the morning until 10:00 p.m.; the Starbucks at this location operates from approximately 5:30-6:00 a.m. until 10:00 p.m.  (See Def.'s Ltr. Br., Ex. 3, at 4.)  Plaintiff has not alleged the record that she has ever sought to access the Starbucks at any time earlier than 8:00 a.m.  There is also no evidence in the record the she or anyone else has ever been denied access through the CVS thoroughfare.

## II.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial.  Id. at 322-23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).  Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact

for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted).  In addition, "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks and citation omitted).

III.    APPLICABLE ADA STANDARDS

Title III of the ADA protects individuals against discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).  Following the passage of the ADA, all new construction and alterations to existing structures must be "accessible" to individuals with disabilities.  Id. § 12183(a)(1), (2).  To clarify what constitutes "equal access," Congress directed the Department of Justice ("DOJ") to issue "regulations . . . [that] include standards applicable to facilities . . ." covered by Title III.  Id § 12186(b). Any such standards must be "consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board".  42 U.S.C. § 12186(c).

Pursuant to this congressional directive, the DOJ promulgated Accessibility Guidelines ("ADAAG" or "Guidelines") that set forth structural requirements.  The

first set of Guidelines are those which issued in 1991.  28 C.F.R. Pt. 36, App. D
("1991 Guidelines").  Those Guidelines were revised but not abrogated in 2010.  28
C.F.R. §§ 36.101 et seq. ("2010 Guidelines").  For structures originally built prior to
1991 but altered subsequent to that time, a threshold issue for parties concerns
which set of Guidelines applies.  With regard to the dispute here, there is no
material difference between the two sets of Guidelines.[6]  The Court sets forth the
relevant provisions of each.

As a general matter, both sets of Guidelines provide for "Equivalent
Facilitation."  1991 Guidelines § 2.2; 2010 Guidelines § 103.  The 1991 Guidelines
state that "[d]epartures from particular technical and scoping requirements of this
guideline by the use of other designs and technologies are permitted where the
alternative designs and technologies used will provide substantially equivalent or
greater access to and usability of the facility."[7]  1991 Guidelines § 2.2.  Similarly,
the 2010 Guidelines provide, "Nothing in these requirements prevents the use of
designs, products or technologies as alternatives to those prescribed, provided they
result in substantially equivalent or greater accessibility and usability."  2010
Guidelines § 103.

---

[6]      In the dispute before this Court, the parties agree that the defendant Shopping Center made
certain alterations to the premises in 2008, including the creation of the Northern walkway.  There
is no allegation that the structures in which the CVS or Starbucks are located were altered after
1991.  Nor have the parties spent any significant time on which Guidelines apply.  In fact, there are
no material differences that would affect the outcome here.

[7]      The term "facility" is defined to include walkway.  1991 Guidelines § 3.5.

Though set up somewhat differently, both the 1991 and 2010 Guidelines set forth similar definitions for accessible sites and buildings.  The 1991 Guidelines provide that an Accessible Site shall meet the following minimum requirements:

> (1) At least one accessible route complying with 4.3 shall be provided within the boundary of the site from public transportation stops, accessible parking spaces, passenger loading zones if provided and public streets or sidewalks, to an accessible building entrance.

> (2) At least one accessible route complying with 4.3 shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site.

1991 Guidelines § 4.1.2.  An Accessible Building is defined as:

> (1) At least one accessible route complying with 4.3 shall connect accessible building or facility entrances with all accessible spaces and elements within the building or facility.

1991 Guidelines § 4.1.3.  Section 4.3 of the 1991 Guidelines sets forth the definition of Accessible Route.  It states that "[a]ll walks, halls, corridors, aisles, skywalks, tunnels or other spaces that are part of an accessible route shall comply with 4.3." 1991 Guidelines § 4.3.1.

Under the 2010 Guidelines provide that an "accessible route" shall be provided at site arrival points as follows:

> At least one accessible route shall be provided from within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance that they serve.

2010 Guidelines § 206.2.  The Advisory comment to this provision states, "Each site arrival point must be connected by an accessible route to the accessible building

entrance or entrances served . . . the accessible routes must serve all of the accessible entrances on the site." Id.

The 2010 Guidelines further specify that within a site, "at least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site." Id. § 206.2.2.  A circulation path is defined as "[a]n exterior or interior way of passage provided for pedestrian travel, including but not limited to, walks, hallways, courtyards, elevators, platform lifts, ramps, stairways, and landings." Id. § 106.5; see also 1991 Guidelines § 3.5 (defining "circulation path" as substantially the same as above and "accessible route" as "[a] continuous unobstructed path connecting all accessible elements and spaces of a building or facility").

IV.   DISCUSSION

Plaintiff's argument boils down to the following contention:  because two routes are available to a non-wheelchair user to access the Front of the Shopping Center from the Back—1) via the Northern walkway and 2) via the CVS—it is a violation of the ADA to limit a wheelchair user to only the CVS thoroughfare.[8] Specifically, plaintiff contends that the availability of the Northern walkway to non-wheelchair users provides them with the ability to enjoy the public accommodation of Starbucks in a different manner than individuals who use wheelchairs.  Plaintiff

---

[8]      Plaintiff also argues that once she is inside the medical facility, she would be "stranded" as she cannot travel directly into the CVS, and vice versa.  (Pl.'s Ltr. Br. at 1.)  Plaintiff has never before raised this claim.  Nor is there any evidence that she has ever traveled between the CVS and the medical facility on the same trip.  Moreover, plaintiff does not contest that from the Back parking lot there are accessible routes to and from both the CVS and the medical facility, indicating that plaintiff can indeed travel from one to the other along accessible routes.

argues, "Defendant commits unlawful segregation by providing the non-disabled with an exterior pedestrian walkway while, at the same time, refusing to provide an accessible exterior path of travel to the disabled." (Pl.'s Ltr. Br. at 4.)  Plaintiff further contends that, "Defendant is therefore required to provide a pedestrian path for the disabled at the same location as the route used by the general public." (Id.) As support for her position, plaintiff points to the overall purpose of the ADA, various statutory provisions, and that CVS is a non-party to this action, separately operated, and opens an hour to an hour and a half later than Starbucks.

Defendant Wykagyl has a number of responses.  First, defendant notes that the legal issue need not even be addressed by this Court as neither the lack of an exterior access route between the Back and Front of the Shopping Center nor the lack of accessibility of the Northern walkway was alleged in the complaint.  (Def.'s Ltr. Br. at 2.)  Second, defendant contends that in any event plaintiff misunderstands the requirements of the ADA.  According to defendant, it has fulfilled its obligations under the ADA here at issue by providing accessible paths between the Back and Front of the Shopping Center.  (Id.)  Defendant points to two ways in which plaintiff can access the Starbucks and other stores in the Front of the Shopping Center:  through the CVS thoroughfare or by parking in designated accessible parking in the Front.  Defendant argues that the Northern walkway is not the general circulation path – and that indeed it is longer and less safe than any one of the alternative routes.  (Def.'s Ltr. Br. at 4.)

Defendant's arguments are substantially and materially correct.  First, the lack of accessibility of the Northern walkway is not alleged in the complaint as a basis for any ADA violation.  All of the allegations regarding access violations are contained in paragraph 21 of the complaint.  The first six relate to parking spaces, the seventh and eighth relate to access aisles, the ninth through twelfth relate to curb ramps, and the remainder (13th – 30th) relate specifically to the exterior or interior of the Starbucks.  (Compl. ¶ 21.)  Put bluntly, plaintiff has not alleged the very claim as to which she now seeks judgment in her favor.  This alone provides a sufficient basis for a ruling in favor of defendant.  But as the merits are also clear, the Court addresses those as well.

Plaintiff also misreads the statutory scheme as requiring that the Northern walkway be accessible.  The statute requires that the Shopping Center have "at least one" accessible route from accessible parking spaces to the facility or building entrance that they serve.  2010 Guidelines § 206.2.  Nowhere in the ADA guidelines is there the requirement that a plaintiff has the ability to select a specific pathway to make accessible when there is already another accessible route available.  Here, there are at least two accessible routes to various locations in the Shopping Center.  First, the accessible building or facility that is at issue and which forms the subject of plaintiff's claim is that in which the Starbucks is located.  Plaintiff can access the Starbucks most directly by parking in a designated and accessible parking space in the Front of the Shopping Center.  In addition, from the Back parking lot of the Shopping Center, plaintiff can proceed via the CVS thoroughfare to any of the stores

in the Front.  There are no facts before this Court which indicates that there has been or would be any issue with these methods of access.

The CVS thoroughfare provides a complete accessible route to all of the other stores in the Front.  Notably, if plaintiff has chosen to park in the Back, it is likely that she would have immediate business at the CVS or the medical facility; otherwise, parking in such a location makes little sense.  If she also wishes to visit stores in the Front, access through the CVS presents no difficulty or inconvenience.

Plaintiff argues that the CVS thoroughfare denies disabled individuals equal access by providing a "'separate' and 'different' pedestrian pathway[] to the non-disabled individuals than what is provided for the disabled," thereby "commit[ing] unlawful segregation."  (Pl.'s Ltr. Br. at 4.)  However, plaintiff does not dispute that non-disabled customers regularly use the CVS thoroughfare to access various facilities in the Front of the Shopping Center.  Therefore, it is difficult to see why the CVS thoroughfare used by disabled and non-disabled visitors alike creates separate—nevermind unequal—access.[9]  Plaintiff's reliance on <u>Caruso v. Blockbuster-Sony Music Ent'mt Centre at the Waterfront</u>, 193 F.3d 730, 740 (3d Cir. 1999) is similarly misplaced.  In <u>Caruso</u>, the Third Circuit rejected defendant's argument that additional interior seating was an equivalent facilitation to exterior lawn seating at a concert hall because wheelchair users were completely denied

---

[9]      Indeed, plaintiff's arguments about failure to meet equivalent facilitation are misplaced, as the CVS thoroughfare is not an equivalent facilitation but rather an accessible route;  it does not "depart[] from particular technical and scoping requirements" of the ADA.  2010 Guidelines § 2.2.  Defendant employs the equivalent facilitation argument in the alternative, and in that respect it is correct:  the CVS thoroughfare's alternative design of indoor access provides substantially equivalent or greater access to the Starbucks and other Front facilities than the Northern walkway because of its shorter distance, weather control and safety.

access to an entire seating area of 18,000 seats in the lawn facility.  There, wheelchair users were clearly restricted from enjoying the concert facility in the same way as those who were able to sit in the lawn area.  See id., 193 F.3d at 839. In the instant case, the interior CVS thoroughfare provides both plaintiff and non-disabled visitors alike an accessible route to the enjoyment of the facilities in the Shopping Center.

Plaintiff's argument that the different business hours of CVS and Starbucks renders the CVS thoroughfare legally inaccessible is without merit. It is an argument of convenience—that is, the fact of the differing business hours is being used here as a litigation position when in reality there are no true instances when such a situation would occur.  The Starbucks is the first shop to open in the Shopping Center.  Why in the world would anyone park in the Back lot— surrounded only by closed businesses—when her purpose at such an early hour could only be to access Starbucks?[10]  That plaintiff proposes the Northern walkway as the solution is patently unreasonable, as it would require plaintiff to park her car further away from her destination, then proceed several hundred feet around buildings which are closed at that hour, only to make her way to the sole building open—all potentially before the sun has risen and therefore in the dark.  The Court need not assume that such a scenario would ever occur.  There is no legal requirement that defendant ever make such an assumption either.

---

[10]     The Court also notes that plaintiff has never alleged that she was unable to find an accessible parking spot in the Front before 8 a.m.  Furthermore, given that defendant has agreed to designate a specific parking spot in the North parking lot for plaintiff's exclusive use, there is no need for her to ever use the Back parking lot.  (See Breede Decl., ECF No. 61, ¶ 11.)

14

V.      CONCLUSION

The Court has considered plaintiff's other arguments and finds that they are

without merit.  For the above reasons, the Court grants summary judgment in favor

of defendant Wykagyl on the issue that is the subject of this motion.

The parties shall confer and inform the court not later than **May 8, 2016** as

to whether a final settlement has been reached as to defendant Starbucks.

Not later than May 8, 2016, plaintiff shall inform defendant of which claims

specifically remain to be addressed and why.  Thereafter, defendant shall move for

summary judgment on any remaining issues not later than **May 23, 2016**.  Plaintiff

shall oppose not later than **June 13, 2016**.  Any reply shall be filed not later than

**June 20, 2016**.

SO ORDERED.

Dated:      New York, New York
            May 4, 2016


                                        _____
                                              KATHERINE B. FORREST
                                              United States District Judge